United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMANDA DORGER, GABRIELLE POCCIA,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF NAPA, OFFICER BRAD BAKER, OFFICER NICK DALESSI,<br><br>Defendants. | Case No.:12-cv-440 YGR<br><br>**ORDER DENYING MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Plaintiffs Samanda Dorger and Gabrielle Poccia bring this action alleging claims against Defendants City of Napa, Officer Brad Baker and Officer Nick Dalessi ("Defendants") alleging claims in their Second Amended Complaint ("SAC") under 42 U.S.C. § 1983, for negligence and wrongful death, and for violation of California Civil Code § 52.1. Defendants move to dismiss the claims alleged in the SAC against Defendant City of Napa ("the City"), as well as Plaintiffs' prayer for punitive damages to the extent stated against the City.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** the Motion to Dismiss.[1]

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument. Accordingly, the Court **VACATES** the hearing set for **September 4, 2012**.

## SUMMARY OF ALLEGATIONS

The facts here are taken from the allegations of Plaintiffs' Second Amended Complaint, which the Court accepts as true for purposes of the motion to dismiss. Plaintiffs Samanda Dorger and Gabrielle Poccia ("Plaintiffs") are the surviving wife and daughter, respectively, of Richard Poccia ("Mr. Poccia"), who was shot and killed by the Napa Police on November 28, 2010. Mr. Poccia, a 60-year-old man employed as a registered nurse, was in a state of mental health distress when he spoke with City of Napa Police Sergeant Amy Hunter by phone. Sergeant Hunter assured Mr. Poccia that he should come out of his house so that officers could be sure that he was all right and that he would not be arrested. Mr. Poccia agreed to come out of the house, unarmed, with no jacket on and his shirt tucked in so as to demonstrate that he did not have a weapon. Mr. Poccia did so, and complied with the instructions of the officers. However, the City mounted a "full-scale SWAT action" wherein several police officers approached his house. Ultimately, the officers involved pointed their weapons at Mr. Poccia, yelling confusing and contradictory instructions and escalating the situation. The officers directed Mr. Poccia to walk out of his house and walk slowly backwards up the street toward them. Shortly after Mr. Poccia walked onto the street, Defendant Officer Brad Baker fired two electric barbs from a Taser unit, and stunned Mr. Poccia with an electrical shock. Defendant Officer Nick Dalessi then fired an assault rifle at Mr. Poccia's back, at close range, striking him in the back of the head and killing him. Plaintiffs allege that one witness stated Mr. Poccia's hands were already handcuffed before he was shot. The use of a rifle by Officer Dalessi was contrary to the radio instruction given by his superior, Sergeant Hunter, to limit the use of force to the Taser.

## STANDARDS APPLICABLE TO THE MOTION

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir.

2003). Review is generally limited to the contents of the complaint. *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir. 1995). All allegations of material fact are taken as true. *Erickson v. Pardus,* 551 U.S. 89, 93, 94 (2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("*Iqbal*").

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46. Nevertheless, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("*Twombly*"). Thus, a motion to dismiss will be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See id.* at 558-59.

## DISCUSSION

I.  *MONELL* CLAIM AGAINST THE CITY

The City moves to dismiss the third claim for relief under 42 U.S.C. § 1983 for municipal *Monell* liability. The Court previously ruled that the original complaint alleged the claim against the City insufficiently because the allegations of a policy, long-standing custom, or ratification of the conduct of individuals were pleaded in a conclusory manner, and therefore did not meet the minimal pleading standards established by the Supreme Court in *Iqbal* and *Twombly*. Defendant insists that the allegations in the Second Amended Complaint continue to be insufficient under *Iqbal* and *Twombly*. Plaintiffs argue that the City ignores the most recent authority from the Ninth Circuit regarding sufficiency of a *Monell* claim.

Prior to *Iqbal* and *Twombly*, the long-standing rule in the Ninth Circuit was that a plaintiff need only make "a bare allegation that the individual [defendants'] conduct conformed to official

3

policy, custom, or practice." *Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 623 (9th Cir. 1988). Thus the Supreme Court rejected a heightened pleading standard for *Monell* claims in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993). While neither of the later Supreme Court decisions in *Iqbal* and *Twombly* overruled *Leatherman,* the pleading standard for *Monell* claims was thrown into question.

In *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) *cert. denied,* 132 S. Ct. 2101 (2012), the Ninth Circuit considered the impact of *Iqbal* and *Twombly,* and concluded that a pleading of municipal liability: (1) "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) that the facts must "plausibly suggest an entitlement to relief." *Starr,* 652 F.3d at 1216, *citing Twombly,* 550 U.S. 544, *Iqbal,* 556 U.S. 662. With respect to the term "plausibility," the *Starr* court explained:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable.

*Starr,* 652 F.3d at 1216-17 (emphasis added), citing *Twombly,* 550 U.S. at 556; *see also AE ex rel. Hernandez v. County of Tulare,* 666 F.3d 631, 640 (9th Cir. 2012) (applying *Starr* to municipal liability claims, holding that "plausible facts supporting a policy or custom ... could cure[] the deficiency in [a] *Monell* claim.").

Under 42 U.S.C. § 1983, a public entity "cannot be held liable solely because it employs a tortfeasor." *Monell v Dep't of Social Services*, 436 U.S. 658, 691 (1978). A *Monell* claim for section 1983 liability against the City may be stated in one of three circumstances: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of "deliberate indifference" to constitutional rights; or (3) when a local

4

government official with final policy-making authority ratifies a subordinate's unconstitutional conduct. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (synthesizing Supreme Court authorities).

Here, the SAC alleges all three bases for *Monell* liability. (SAC ¶ 46.) While any one of these, if sufficiently alleged, would preclude dismissal of the claim, the Court addresses the sufficiency of the allegations supporting each basis in turn.

### A. Official Policy or Custom

Specifically with respect to official policies and customs, Plaintiffs allege that the City "had a policy of failing to engage mental health workers in police responses to crisis situations concerning individuals in need of mental health assistance" (SAC ¶ 28) and "policies of allowing its officers to use excessive and lethal force." (SAC ¶ 47.) Plaintiffs allege that the existence of an official policy is reflected in the Grand Jury's report, issued after its investigation of the shooting. (SAC ¶ 47.) The Grand Jury investigation found that the events leading to Mr. Poccia's death were due, at least in part, to the police department's failure to coordinate its training and practices with mental health professionals. (SAC ¶ 48.) The Grand Jury report found that "[p]reviously, as a matter of policy, in situations where weapons are concerned crisis workers are not called out. Police exclusively are expected to handle the event." (SAC ¶ 28.) Plaintiffs allege that the Grand Jury's report went on to criticize that policy and recommend that a mental health crisis worker be employed to monitor such situations and provide input to the officers on scene. (SAC ¶ 28.) Thus, Plaintiffs allege that the City's policies of allowing its officers to use excessive force, and of not utilizing mental health workers in crisis situations exhibited deliberate indifference to the constitutional rights of Mr. Poccia and others. (SAC ¶ 47.)

These allegations are sufficient to allege a City policy as a basis for section 1983 liability against the City. Plaintiffs have alleged "plausible facts supporting . . . a policy or custom." *AE ex*

*rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). No more is required at the pleading stage.

### B. Omissions and Failures Establishing Deliberate Indifference

A *Monell* claim based upon inadequate training requires that the claimant allege and prove that the failure to provide a particular kind of training showed deliberate indifference to the possibility of a constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). As the Supreme Court has stated, training is inadequate for purposes of section 1983 when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. 378 at 390; *see also Connick v. Thompson*, 563 U.S. ___, 131 S.Ct. 1350, 1360 (2011); *Dougherty v. City of Covina,* 654 F.3d 892, 900 (9th Cir. 2011). "Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." *City of Canton*, 489 U.S. at 391. A pattern of similar violations will demonstrate a public entity's deliberate indifference for purposes of a failure to train claim. *Connick*, 563 U.S. __, 131 S.Ct. 1350, 1360.

Plaintiffs allege that Mr. Poccia's shooting stemmed from failure to train officers who might come into contact with individuals in mental health crisis or otherwise diminished mental capacity, and that the need for training to avoid mishandling of these types of situations has been obvious to the City for years prior to this shooting. (SAC ¶¶ 27, 48.) Plaintiffs also allege that the failure of the officers on scene to follow instructions to de-escalate the situation and not to use deadly force evidences the lack of adequate training. (SAC ¶¶ 50, 51.) The complaint further alleges that other complaints have been made against the City's police department for use of excessive force and for failure to respond appropriately to persons in mental health crisis. (SAC ¶ 54.) The facts alleged

6

state a plausible basis for finding that the City knew of the need for training with respect to excessive force and handling crisis situations involving persons with mental health problems. They sufficiently state a basis for finding that the City was aware of and deliberately indifferent to the need for such training.

Moreover, Plaintiffs' allegations that officers failed to follow an organized plan of response or to obey instructions regarding use of deadly force supports a failure to train theory. While the City seeks to characterize these failures as acting contrary to training, and opines that they might have occurred regardless of training, these alternative interpretations of the facts alleged do not mean that the claim as stated is not plausible.

Finally, the allegations here may, if proven, establish a basis for finding a deliberate indifference to the need for training even in the absence of prior, similar violations. The Supreme Court has left open the possibility, "however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick,* 563 U.S. __, 131 S. Ct. 1350, 1361 (*citing City of Canton,* 489 U.S. 378 at 390 n.10). While proving "deliberate indifference" generally requires a showing of such a pattern, particularly egregious circumstances or an obvious need for training based upon a single incident may suffice. *Schwartz v. Lassen County ex rel. Lassen County Jail (Det. Facility)*, 838 F. Supp. 2d 1045, 1058 (E.D. Cal. 2012) (citing *Connick,* 131 S. Ct. at 1361). In *Schwartz*, the plaintiff's son died in custody despite the public entity knowing that: he had a serious medical condition; he requested and was refused medical care; he had previously experienced medical complications while detained at the facility; and his physician recommended that he not be detained at the facility due to his condition. *Id.* Based on those allegations, the court in *Schwartz* found that "[a]t this stage of the litigation, absent more fully-developed facts, the Court declines to dismiss Plaintiff's § 1983 claims on the basis that Plaintiff has only alleged a single incident." *Id.* Based on

7

the egregiousness of the allegations here, like *Schwartz*, "it is plausible that the failure to train was so obviously deficient that it could lead to liability resulting from the single constitutional deprivation at issue here." *Id.* Thus, like the court in *Schwartz*, the Court declines to dismiss Plaintiffs' claim at the pleading stage on the grounds that there is only a single incident alleged.

**C.     Ratification**

Finally, Plaintiffs allege that the City ratified the conduct of the individual officers involved because the City's response to the incident was to delay a serious investigation, ignore contradictory evidence, and ultimately exonerate the officers involved. To show ratification, a plaintiff must prove that the "authorized policymakers approve a subordinate's decision and the basis for it." *Christie v. Iopa,* 176 F.3d 1231, 1239 (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988)). "Ordinarily, ratification is a question for the jury." *Id.* at 1238-39; *see also Estate of Escobedo v. City of Redwood City*, 2005 WL 226158 (N.D. Cal. Jan. 28, 2005). However, ratification of conduct, and thus the existence of a *de facto* policy or custom, can be shown by a municipality's post-event conduct, including its conduct in an investigation of the incident.

In *Henry*, the Ninth Circuit held that "post-event evidence" may be used to prove the existence of a municipal policy in effect at the time of the plaintiff's unconstitutional treatment. *Henry v. County of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997) *opinion amended on denial of reh'g,* 137 F.3d 1372 (9th Cir. 1998); *see also McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) ("[p]olicy or custom may be inferred if, after the [incident] . . . officials took no steps to reprimand or discharge the guards, or if they otherwise failed to admit the guards' conduct was in error"). In *Henry,* the plaintiff was stopped for a traffic violation and then detained, stripped, and held in a rubber-padded room for several hours after he refused to sign the traffic ticket. The officers involved were not reprimanded afterwards. There were a large number of personnel involved in the incident, acting over a long period of time. The Ninth Circuit found that both the evidence of continuing

threats during the plaintiff's detention by the County, as well incidents after plaintiff's detention that were similar, supported a finding that the County's treatment of plaintiff was part of a pattern and custom rather than an isolated incident. *Id.* at 520-21. Thus, the Ninth Circuit has held that statements or conduct by a municipality tending to show that it endorsed or approved the unconstitutional conduct of individual officers evinces ratification, regardless of whether they precede the unconstitutional actions or post-date them. *Id.*

Moreover, while failure to reprimand, standing on its own, may not be sufficient to establish ratification, additional evidence of agreement or acquiescence to the conduct will support a finding of ratification. *See Christie*, 176 F.3d at 1240 (failure to discipline along with after-the-fact conduct indicating that policymaker agreed with selective prosecution sufficient to show ratification); *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (failure to take remedial steps after violations is evidence of a policy or custom).

Here, Plaintiffs have alleged that the City delayed its investigation and disregarded evidence adduced during the investigation, particularly eyewitness testimony that contradicted the testimony of the officers involved. (SAC ¶ 56.) The City exonerated the officers, despite eyewitness reports that Mr. Poccia posed no threat to them or to others at the time he was shot and killed. (SAC ¶ 57.) The Grand Jury's report after its investigation criticized the Police Department for being "delinquent" in delaying its internal affairs report for over 16 months, "preclud[ing] a full investigation by the Grand Jury into the shooting." (SAC ¶ 29.) The Grand Jury further criticized the Police Department for failing to take an objective, unbiased look at what transpired. (SAC ¶ 59.) The allegations go beyond just a bare assertion of failure to reprimand. They are sufficient to state a plausible basis for a *Monell* claim against the City based upon ratification. Therefore, the motion is **DENIED**.

## II. NEGLIGENCE AND WRONGFUL DEATH

The City moves to dismiss the fourth claim for negligence on the grounds that it does not state a statutory basis for liability. The Court previously ruled that a statutory basis for liability was required and Plaintiffs had failed to plead one. Thus, leave to amend was granted. The SAC, as amended, now cites Government Code § 815.6 as the statutory basis for holding the City vicariously liable based upon the conduct of its officers. The City does not attack the propriety of that statutory basis *per se*. Instead the City argues that Plaintiffs are also attempting to state a claim for direct liability since the SAC alleges that the City breached its duties to Plaintiffs.

Plaintiffs' opposition to the motion confirms that they are only seeking to hold the City liable based upon derivative liability, not direct liability. The factual and statutory basis for holding the City liable is pleaded sufficiently. The motion to dismiss is **DENIED**.

## III. VIOLATION OF BANE ACT, CALIFORNIA CIVIL CODE §§ 52 AND 52.1

The City also argues that the fifth claim under Civil Code § 52.1 is improper because the statute does not provide for direct liability against a public entity. First, the City cannot make this argument in the instant motion to dismiss. Defendants previously moved to dismiss this claim on different grounds (that a personal capacity claim was not permitted and that the successor claim based on a violation of the Fifth and Fourteenth Amendments was not sufficiently alleged). That prior motion was granted *without* leave to amend. It is procedurally incorrect for Defendants to move to dismiss this claim on new grounds now. *See* Fed. Rules Civ. Proc. 12(g) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from

10

its earlier motion."); *see also Fed Agr. Mortg. Corp. v. It's A Jungle Out There, Inc.,* 2005 WL 3325051, *5 (N.D. Cal. Dec. 7, 2005) (same).[2]

Moreover, on the merits of the claim, the City offers no authority for the notion that it cannot be considered a "person" who "interferes by threats, intimidation, or coercion. . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1. To the contrary, the authorities interpreting the statute show that a public entity can be liable for "misconduct that interferes with federal or state laws, if accompanied by threats, intimidation, or coercion, and whether or not state action is involved." *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004); *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 760 (2002) (Bane Act claim against County was "analogous to a federal claim for personal injury under 42 U.S.C. § 1983"); *see also Atchley v. Snow,* 2012 WL 1361793 (S.D. Cal. Apr. 16, 2012) (county may be considered a "person" for purposes of Section 52.1 liability). Thus, the motion to dismiss this claim is **DENIED**.

IV.   PUNITIVE DAMAGES

The City moves to dismiss allegations of entitlement to punitive damages on the grounds that they are not recoverable against a municipal defendant as a matter of law. Defendants argue that Plaintiffs' complaint prays for punitive damages under 42 U.S.C. § 1983 and California law without limiting them to the individual defendants only. Punitive damages are not recoverable against a public entity as a matter of state and federal law. Cal. Gov. Code § 818; *City of Newport v. Facts Concert, Inc.*, 453 U.S. 247, 271 (1981). However, Plaintiffs are free to seek punitive damages against the individual defendants. *See, e.g.*, *C.N. v. Wolf*, 410 F. Supp. 2d 894, 904 (C.D. Cal. 2005).

---

[2] While it is true, as the City notes on reply, that a motion for judgment on the pleadings under Rule 12(c) would be available to challenge the failure to state a claim, such a motion must be made "after the pleadings are closed."

11

Procedurally, the motion here does not appear to be on a sound footing.  A motion under Rule 12(b)(6) may not be used to challenge only certain allegations within a claim, but rather, the challenge must be made under Rule 12(f).  *Thompson v. Paul*, 657 F.Supp.2d 1113, 1129 (D. Ariz. 2009).  The Court has the discretion to construe a motion to dismiss as a motion to strike pursuant to 12(f) when appropriate.  *Id.*  However, the Ninth Circuit has made plain that a court cannot strike certain damages under Rule 12(f) based upon an argument that they are precluded by law. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).  Moreover, the defense or objection was not raised in Defendants' previous motion.

Procedural issues to the side, the prayer does not appear to be improper on its face, seeking as it does "punitive damages pursuant to 42 USC §1983 and California law."  The motion is therefore **DENIED**.

## CONCLUSION

Based upon the foregoing, the motion to dismiss the City from portions of the Second Amended Complaint is Denied.  Defendants shall file and serve their answer to the Second Amended Complaint no later than September 18, 2012.

**IT IS SO ORDERED**.

Date: August 31, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**